**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**MAX P. EUGENE,
ALIEN # A77-011-203,**

       **Petitioner,**

**vs.**                                    **Case No. 4:08cv346-RH/WCS**

**MICHAEL B. MUKASEY,
ATTORNEY GENERAL OF THE
UNITED STATES, et al.,**

       **Respondents.**

**_____/**

**REPORT AND RECOMMENDATION**

Petitioner, proceeding *pro se*, filed a petition seeking a writ of habeas corpus under § 2241 on July 31, 2008.  Doc. 1.  Respondents filed their Answer to the petition on October 8, 2008.  Doc. 15.

There have been several mail returns in this case, docs. 13 and 16.  After Respondents clarified Petitioner's custody status and location, doc.17, a court order was entered directing clarification as to whether the case was moot.  Doc. 19.  Petitioner field an affidavit, doc. 20, and Respondents indicated Petitioner was still in the custody of ICE, and currently detained in Louisiana.  Doc. 21.  Another order provided Petitioner

with yet another copy of the Answer (doc. 15) to ensure Petitioner could respond to the arguments raised by the Government.  Doc. 22.  Petitioner was given another extension of time to rile a response, and the February 18, 2009, deadline has now expired without Petitioner filing a response to the Answer.  As sufficient opportunities have been provided, it is time to rule on the merits of this § 2241 petition.

## Allegations of the § 2241 petition, doc. 1

Petitioner, *pro se* in this case, alleged that he is a native of the Bahamas, having been born in Nassau, Bahamas on December 18, 1973.  Doc. 1, pp. 1, 4.  Petitioner contends the Government will not be able to remove him in the reasonably foreseeable future, but refuses to release him.  *Id.*, at 1, 3.  Petitioner was ordered removed on January 3, 2008, and the order became final on that date as he did not appeal the removal order.  *Id.*, at 5.  Petitioner entered immigration custody on November 5, 2007.  *Id.*, at 1.  As the petition was filed on July 31, 2008, Petitioner had been in detention for more than six months at case initiation.  Petitioner does not challenge the order of removal, just release under Zadvydas, 533 U.S. 768, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001).  *Id.*

## The Answer, doc. 15

Respondents contend Petitioner's detention is lawful, claiming "Petitioner has failed to demonstrate that there is no significant likelihood of removal in the reasonably foreseeable future."  Doc. 15, p. 2.  Respondents concede that Petitioner filed this case on July 31, 2008, after the expiration of the six months and so, Petitioner has "met the burden of demonstrating post-removal order detention of over six months."  *Id.*, at 4.

Respondents argue, however, that Petitioner has "failed to meet the second burden-shifting prerequisite" because he has made only conclusory allegations that neither the Bahamas nor Haiti would issue travel documents.  *Id.*, at 5.  Respondents suggest that steps are being taken to procure the necessary travel documents.  *Id.*

Petitioner has dual nationality in both the Bahamas and Haiti.  *Id.*, at 5.  Efforts were made to obtain a travel document from the Bahamas where Petitioner was born. *Id.*  The request was denied because Petitioner "is not in fact a Bahamaian citizen."  *Id.*; *see also* doc. 15, attachment (Declaration of Deportation Officer Hector Gonzalez)[1] (doc. 15-2, p. 2).  Respondents contend Petitioner "is a national of Bahamas and citizen of Haiti."  *Id.*  While acknowledging that the Bahamian Consulate denied the request for a travel document, ICE has also requested a travel document from Haiti.  *Id.*, at 5; *see also* Declaration (doc. 14-2, pp. 3-4).

Respondents assert Petitioner can be removed to Haiti as the Department of Homeland Security maintains diplomatic relations with that country, but acknowledge that removal has been delayed because ICE has temporarily stopped all removal flights to Haiti for humanitarian purposes "due to the adverse affects of a consecutive tropical storm and a hurricane had on Haiti."  *Id.*, at 5-6.  Thus, Respondents claim that when the suspension is lifted, Petitioner will be set for removal to Haiti.  *Id.*, at 6.

Indeed, Respondents note that Petitioner had previously been scheduled to be removed and was set to depart the United States on August 27, 2008.  Doc. 15, p. 6.

---

[1] All references to exhibits are to the paper copy and page number first, followed by a reference (in parenthesis) to the corresponding document and page in the electronic docket.  Both citations are referenced as a pro se litigant will not have access to the court's electronic docket.

However, the flight had to be cancelled due to the effects of the tropical storm and a hurricane in Haiti.  *Id.*

The Declaration attached to the Answer states that Petitioner was taken into ICE custody on October 15, 2007, rather than in November as alleged in the petition.  Doc. 15, Declaration, p. 3 (doc. 15-2, p. 3).  Petitioner was ordered removed on January 3, 2008, and on January 14, 2008, the first formal request was submitted to the Bahamian Consulate General in Miami, Florida.  Doc. 15, Declaration, p. 3. (doc. 15-2, p. 3). Additional inquires were made concerning the request on February 11, 2008, February 25, 2008, March 6, 2008, March 21, 2008, and April 1, 2008.  *Id.*  The "travel document was listed as 'pending.' "  *Id.*

While the requests to the Bahamas were still pending, ICE requested an emergency travel document from Haiti as well on February 4, 2008.  Doc. 15, Declaration, p. 4 (doc. 15-2, p. 4).  On April 25, 2008, a second request was submitted to Haiti.  *Id.*  Thereafter, on May 29, 2008, the Bahamian Consulate issued a formal letter of denial.  Doc. *Id.*  Two months later, on July 30, 2008, Petitioner was served a "Notice to Alien of removal to Other than Designated country" and a third request for assistance in removing Petitioner to Haiti was submitted.  Doc. 15, Declaration, pp. 4-5 (doc. 15-2, pp. 4-5).

There is no suggestion that a travel document was ever received for Petitioner. Nevertheless, on August 25, 2008, Petitioner was transferred to New Orleans for removal to Haiti, and he was scheduled to "depart the United States via a JPATS flight on August 27, 2008."  *Id.*, at 5.  The Declaration concludes with this information:

> Due to consecutive tropical storms/hurricanes in the Gulf Coast and
> Caribbean, all the Haitian removals were suspended.  At this time ICE is
> waiting for the Haitian government to resume flights to Haiti.

*Id.*

**Analysis**

This Court has jurisdiction over this § 2241 habeas petition as Petitioner is not challenging a final order of removal, but only seeking release from what he asserts is an unlawful and indefinite period of detention pursuant to Zadvydas v. Davis, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001).  In Zadvydas, the United States Supreme Court considered a challenge to 8 U.S.C. § 1231(a)(6) and was asked to decide whether the statute authorized indefinite detention of a removable alien.[2]  The Court held that the continued detention of legal permanent aliens beyond the mandated 90-day removal period was permissible under the Constitution, but only for as long as was "reasonably necessary to bring about that alien's removal from the United States." *Id.*, at 689, 121 S. Ct. at 2498.  "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute."  *Id.,* at 699, 121 S.Ct. at 2503. For the sake of uniformity, the Zadvydas Court held that "the presumptive period during which the detention of an alien is reasonably necessary to effectuate his removal is six months; after that, the alien is eligible for conditional release if he can demonstrate that there is 'no significant likelihood of removal in the reasonably foreseeable future.' " Clark v. Martinez, 543 U.S. 371, 125 S.Ct. 716, 722, 160 L.Ed.2d 734 (2005), *quoting* Zadvydas, 533 U.S. at 701, 121 S.Ct. at 2505.  Furthermore, in Clark v. Martinez, *supra*,

---

[2] Section 1231(a)(1)(A) provides that the government has a 90-day "removal period" to remove an alien ordered removed from the United States.  8 U.S.C. § 1231(a)(1)(A).

the Court extended its interpretation of 8 U.S.C. § 1231(a)(6) to inadmissible aliens.[3]
The period of time reasonably necessary to effect removal should not be any longer for
an inadmissible alien than for an admissible alien.  Clark, 543 U.S. at 386, 125 S.Ct. at
727.

Accordingly, under Clark and Zadvydas, when an alien shows that he has been
held more than six months beyond the removal period and his removal is not
reasonably foreseeable, a § 2241 petition should be granted.  Clark, 543 U.S. at 386-
387, 125 S.Ct. at 727; Benitez v. Wallis, 402 F.3d 1133, 1135 (11th Cir. 2005) (relying
on Clark to hold that "an inadmissible alien can no longer be detained beyond the
statutory 90-day removal period of § 1231(a)(1), where there was no significant
likelihood of removal in the reasonable foreseeable future.").[4]

Zadvydas established a burden-shifting analysis and, after the presumptive six
month removal period has expired, an alien must provide "good reason to believe that
there is no significant likelihood of removal in the reasonably foreseeable future."
Zadvydas, 533 U.S. at 701, 121 S.Ct. at 2505.  Thereafter, "the Government must
respond with evidence sufficient to rebut that showing."  Id.  The Court noted:

> And for detention to remain reasonable, as the period of prior postremoval
> confinement grows, what counts as the "reasonably foreseeable future"
> conversely would have to shrink.  This 6-month presumption, of course,

---

[3] The relevant statute provides: "An alien ordered removed who is inadmissible
under section 1182 of this title, removable [for violations of nonimmigrant status or entry
conditions, violations of criminal laws, or threatening national security] or who has been
determined by the Attorney General to be a risk to the community or unlikely to comply
with the order of removal, may be detained beyond the removal period and, if released,
shall be subject to the terms of supervision in paragraph (3)."  8 U.S.C. § 1231(a)(6),
quoted in Benitez v. Wallis, 402 F.3d 1133, 1134 (11th Cir. 2005).

[4] An alien must be detained during the "removal period."  8 U.S.C. § 1231(a)(2).

does not mean that every alien not removed must be released after six months.  To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.*, at 701, 121 S.Ct. at 2505.

In this case, Petitioner has met his burden under <u>Zadvydas</u> because he alleged that his removal order was final for more than six months before he filed this petition, that he was being held in indefinite detention, and that it is unlikely that Petitioner can be removed to the Bahamas.  It is undisputed that Petitioner has met the first prerequisite, detention more than six months.  Respondents dispute only that there is no significant likelihood of removal in the reasonably foreseeable future.  Doc. 10, p. 5. Respondents suggest that because Petitioner has a country to which he can be removed, and because others have been repatriated to Haiti in the past, Petitioner has not met the second prong under <u>Zadvydas</u>.  That is incorrect, however.

Petitioner has met the *prima facie* showing as required for relief.  Petitioner demonstrated in the petition that his requests for issuance of a travel document went without response.  Doc. 1, p. 6.  Based on his own unsuccessful efforts and the legnth of his detention, Petitioner asserted it was unlikely that ICE could remove him in the reasonably foreseeable future.

Therefore, Petitioner having met his burden, it shifts to Respondents to provide evidence sufficient to rebut that showing.  Respondents have not done so.

While Respondents contend Petitioner *could* be removed to Haiti, it has not been shown that it is significantly likely that Petitioner *will* be removed in the *reasonably foreseeable* future.  Indeed, Respondents have shown that flights to Haiti have been

suspended.  There is no indication on this record as to *when* the flights might be resumed.  All parties in this case are "waiting for the Haitian government to resume flights to Haiti" without any demonstration of when that might occur.  Perhaps flights have again begun, but the affidavit of Hector M. Gonzalez is not dated, Respondents filed their response on October 8, 2008, and Respondents have not provided any further information since then.

At this point, Petitioner has been in detention for over a year, past the date the order of removal became final.  Respondents have not come forward with any evidence to rebut Petitioner's showing that there is no significant likelihood of Petitioner's removal in the reasonably foreseeable future.  Thus, Petitioner is entitled to release from detention.  *See* Zadvydas, 533 U.S. at 690 and 699-700, 121 S.Ct. at 2499 and 2504 (concluding that "[w]here removal is not foreseeable, then continued detention is unreasonable, is not authorized by statute, and is not constitutionally permissible.").

The statute governing release provides that if an alien "is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General."  8 U.S.C. § 1231(a)(3).  Such regulations are to require the alien to: "(A) to appear before an immigration officer periodically for identification; (B) to submit, if necessary, to a medical and psychiatric examination at the expense of the United States Government; (C) to give information under oath about the alien's nationality, circumstances, habits, associations, and activities, and other information the Attorney General considers appropriate; and (D) to obey reasonable written restrictions on the alien's conduct or activities that the Attorney

General prescribes for the alien." 8 U.S.C. § 1231(a)(3).[5] Respondents should release Petitioner from custody under such terms and conditions deemed necessary pursuant to § 1231(a)(3).

Accordingly, it is **RECOMMENDED** that the petition for a writ of habeas corpus, doc. 1, filed by **Max P. Eugene, Alien # A77-011-203**, pursuant to 28 U.S.C. § 2241, be **GRANTED**, and the Court **ORDER** that Petitioner be immediately released upon conditions of supervision pursuant to 8 U.S.C. § 1231(a)(3).

**IN CHAMBERS** at Tallahassee, Florida, on March 3, 2009.


**s/    William C. Sherrill, Jr.**
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

---

[5] Inadmissible or criminal aliens must be subject to terms of supervision. 8 U.S.C. § 1231(a)(6). Petitioner has criminal convictions. Doc. 15-2, p. 2.